UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL VELASQUEZ,<br><br>                                      Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>                                      Defendant. | Case No.:   23-cv-1683-RBM-BLM<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PLAINTIFF'S MERIT BRIEF**<br><br>**[ECF No. 9]** |

Plaintiff Miguel Velasquez ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision to deny his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. Presently before the Court are Plaintiff's Brief [ECF No. 9 ("Brief")], Defendant's Responding Brief [ECF No. 10 ("Oppo.")], and Plaintiff's reply [ECF No. 12 ("Reply")].

This Report and Recommendation is submitted to United States District Judge Ruth B. Montenegro pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c) of the United States District for the Southern District of California. For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's Brief by **DENIED**.

## PROCEDURAL BACKGROUND

On October 14, 2021, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a disability onset date of August 1, 2018 due to

1

osteoarthritis and degenerative disc disease of the lumbar spine, bilateral knee osteoarthritis, osteoarthritis and degenerative joint disease of the hips, major depressive disorder, and generalized anxiety disorder with insomnia. AR 20. The Commissioner denied the applications initially on February 22, 2022, and on reconsideration on May 27, 2022. AR 82, 103.

On June 26, 2022, Plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on March 28, 2023 via videoconference. AR 36–61. At the hearing, Plaintiff and a Vocational Expert testified. AR 17. On April 7, 2023, the ALJ issued an unfavorable final decision wherein Plaintiff's applications were denied. AR 17-32. The Appeals Council denied review on July 11, 2023, explaining that there was "no reason under [Defendant's] rules to review the [ALJ]'s decision." AR 1. On September 12, 2023, Plaintiff filed the instant action seeking review by this Court. ECF No. 1.

## **SUMMARY OF THE ALJ'S FINDINGS**

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2018, the alleged onset date, but did note that Plaintiff "worked after the alleged disability onset date, but this work activity did not rise to the level of substantial gainful activity" because Plaintiff did not make more than $500 per month occasionally working as an independent contractor. AR 19. Plaintiff also received payments in 2020 and 2021 from his military retirement, but the ALJ did not consider these as they "did not stem from his work activity during the relevant period." Id. As the ALJ did not find that Plaintiff had engaged in substantial gainful activity, he proceeded to step two. Id. At step two, the ALJ found that Plaintiff had the following severe impairments: "osteoarthritis and degenerative disc disease of the lumbar spine; bilateral knee osteoarthritis; osteoarthritis and degenerative joint disease of the hips; major depressive disorder; and generalized anxiety disorder with insomnia." Id. at 20. The ALJ found that the medical and other evidence established that Plaintiff's "shoulder tendonitis, history of ganglion cyst in the left wrist, history of carpal tunnel syndrome, and right ankle pain cause only slight abnormalities that would have no more than a minimal effect on his ability to work" and that these impairments were non-

severe. Id. The ALJ concluded his step two findings by explaining that he considered all of the Plaintiff's medically determinable impairments, including non-severe impairments, when formulating the Plaintiff's residual functional capacity. Id. at 22.

At step three, the ALJ found that Plaintiff's impairments, "considered singly and in combination, do not meet or medically equal the criteria of any medical listing. No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." Id. The ALJ explained that "there was no documented medical need for a walker, bilateral canes, or bilateral crutches, or a wheeled seated mobility device involving the use of both hands" and that Plaintiff had a "normal gait and denied the use of an assistive device throughout the record." Id. (citing AR 50, 81, 98, 107, 134, 310, 365, 379). Similarly, the ALJ found there was no evidence that Plaintiff had an inability to use one or more of his upper extremities to independently sustain, initiate, and complete work-related activities because Plaintiff, despite having reduced range of motion in his wrists, still had normal motor strength, grip and pinch strength, and was able make fists and fully extend his hands. Id.

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work" with the following limitations:

> He cannot climb ladders, ropes, and scaffolds, but can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; he must avoid concentrated exposure to extreme cold and hazards such as unprotected heights and work around dangerous moving machinery; and he can only have occasional work-related general public contact.

AR 24. In reaching this decision, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. at 26. For example, the ALJ noted that Plaintiff reported chronic lower back pain, difficulty twisting, bending, walking, and the use of a cane, but Plaintiff walked with a normal gait. Id. (citing AR 347-350). There were other inconsistencies noted by the ALJ, especially Plaintiff's statements pertaining to his infrequent work during the relevant period, his daily activities, and conservative treatment. Id. at 27.

At step four, based on Plaintiff's RFC and the VE's testimony, the ALJ determined that Plaintiff could perform his past relevant work as an architectural drafter and sterilizer. AR 31. Accordingly, without reaching step five, the ALJ found that Plaintiff was not disabled during the relevant disability period. AR 32.

## STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether the ALJ applied the proper legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla but, less than a preponderance…." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007)).

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks and citation omitted). The Court may not impose its own reasoning to affirm the ALJ's decision. See Garrison, 759 F.3d at 1010. "[I]f evidence exists to support more than one rational interpretation, [the Court] must defer to the [ALJ's] decision." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). The Court will not reverse if any error is harmless. Marsh v. Colvin, 792 F.3d 1170, 1173 (2015) ("ALJ errors in social security cases are harmless if they are inconsequential to the ultimate nondisability determination and that a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ … could have reached a different disability determination.") (internal citations and quotations omitted).

## DISCUSSION

Plaintiff presents two arguments to support his request to reverse the ALJ's decision. See Brief. First, he argues that the ALJ erred in determining Plaintiff's RFC because he failed to include Plaintiff's use of a cane and failed to include limitations due to Plaintiff's carpal tunnel

1    syndrome. Id. at 6-8, 9-10; Reply at 1-3. Second, Plaintiff asserts that the ALJ improperly

2    discounted Plaintiff's subjective symptom testimony. Id. at 10-16; Reply at 3-5.

3    **A. Plaintiff's RFC**

4         The residual functional capacity ("RFC") represents the maximum amount of work a

5    claimant can perform despite their limitations, based on all relevant evidence in the record. See

6    20 C.F.R. § 416.945(a)(1); 20 C.F.R. § 404.1545(a)(1). In making this finding, the ALJ must

7    consider all of the claimant's medically determinable impairments, including those that are non-

8    severe. See 20 C.F.R. § 404.1545(a)(2); see also Buck v. Berryhill, 869 F.3d 1040, 1049 (9th

9    Cir. 2017) (quoting SSR 96-8P, 1996 WL 374184, at *5). The ALJ must assess a claimant's RFC

10   "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3),

11   416.945(a)(3). In conducting this analysis, the ALJ must consider the claimant's testimony

12   regarding their limitations, capabilities, and pain as well as other relevant evidence. Chaudhry

13   v. Astrue, 688 F.3d 661, 670 (9th Cir. 2012); see also Robbins v. Soc. Sec. Admin., 466 F.3d

14   880, 883 (9th Cir. 2006); SSR 96-8P, 1996 WL 374184, at *5. The claimant "is ultimately

15   responsible for providing the evidence to be used in making the RFC finding," but an ALJ has "a

16   special duty to fully and fairly develop the record and to assure that the claimant's interests are

17   considered." Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (citations omitted).

18        In determining whether an ALJ committed error in assessing the RFC, the relevant inquiry

19   is whether the medical evidence supports the ALJ's finding. See Stubbs-Danielson v. Astrue, 539

20   F.3d 1169, 1173–74 (9th Cir. 2008) (holding the RFC assessment adequately captures

21   restrictions if it is consistent with the concrete limitations in the medical opinions); see also

22   Schneider v. Comm'r Soc. Sec. Admin., 433 Fed. Appx. 507, 509 (9th Cir. 2011) (concluding that

23   the ALJ's failure to address claimant's migraines was harmless because medical record did not

24   support finding that migraines would affect claimant's functioning at work). The court must defer

25   to the ALJ's RFC determination "if the ALJ applied the proper legal standard and his decision is

26   supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

27   ///

28   ///

### 1. Plaintiff's Use of a Cane

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to include Plaintiff's use of a cane. Brief at 6. Plaintiff objects to the ALJ's finding that Plaintiff's cane was not medically necessary, arguing that the ALJ improperly cherry-picked supporting evidence and ignored evidence that Plaintiff uses a cane on a regular basis "as a normal mode of locomotion" due to "knee and hip arthritis." Id. at 8 (citing AR 917, 923, 931). Plaintiff also contends that the VA disability Benefit Questionnaires contradict the ALJ's decision and provide the necessary support. Id. (citing AR 931, 945-46).

Defendant responds that the ALJ properly determined Plaintiff's RFC because it includes all of Plaintiff's limitations that were supported by substantial evidence. Oppo. at 7.

### a. The ALJ's Findings

The ALJ found the record did not support Plaintiff's contention that his cane was medically necessary because there was no medical documentation establishing its need, nor describing the circumstances for which it is needed. AR 28. The ALJ acknowledged Plaintiff's testimony that he used a cane but found that "there is simply the use a cane without documentation that it is necessary or that describes the circumstances for which it is needed." Id. The ALJ cited several treatment notes referencing Plaintiff's normal gait and ability to walk independently and found these medical records showed that Plaintiff did not require a cane for ambulation. Id. at 27. The ALJ also referenced Plaintiff's consultative examinations, stating, "his gait was normal and brisk, and he was able to stand on his heels and toes and perform tandem gait. He did not require the use of an assistive device to walk across the examination room." Id. at 28 (internal citations omitted). The ALJ noted that the use of a cane was not supported by the record because Plaintiff's medical records, "including as recently as November of 2022, indicate no assistive device is used while recording a steady gait." Id. (internal citations omitted). The ALJ concluded, "the claimant failed to meet his burden of proof in establishing medical necessity for a cane." Id.

///

///

b. Relevant Law

"[T]he use of an assistive device is probative of a claimant's functional limitations only where it is medically required." Luis G. v. Saul, 2020 WL 1433589, at *3 (C.D. Cal. Mar. 24, 2020); see also Dean N. v. Saul, 2020 WL 430962, at *1 (C.D. Cal. Jan. 28, 2020) ("The use of a hand-held assistive device such as a cane is a functional limitation only if it is medically required.") (citing SSR 96-9p). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Social Security Ruling ("SSR") 96-9p. A claimant's own testimony does not constitute the required medical documentation establishing the need for an assistive device. See Marin v. Astrue, 2012 WL 5381374, at *4 (C.D. Cal. Oct. 31, 2012) (finding ALJ "justifiably concluded that plaintiff's use of a cane did not warrant a more limited RFC" where only plaintiff's own testimony corroborated her use of a cane). Similarly, the fact that various medical providers noted plaintiff's use of a cane does not establish its medical necessity. See Cashin v. Astrue, 2010 WL 749884, at *11 (C.D. Cal. Feb. 24, 2010) (finding physician's observation of claimant's use of cane during examination was not "an objective finding that plaintiff's cane was medically required"); Flores v. Colvin, 2016 WL 2743228, at *14 (E.D. Cal. May 11, 2016) (finding "no medical documentation establishing the need for an assistive device" where all mentions of claimant's cane were "traceable to Plaintiff's self-reports and to his medical sources' observations that he presented with an assistive device").

c. Analysis

Here, Plaintiff has not established that the cane was medically required because he does not identify a doctor that prescribed a cane nor a medical record "describing the circumstances for which it is needed." See SSR 96-9p; see also Luis G., 2020 WL 1433589, at *3; Dean N., 2020 WL 430962, at *1 (citing SSR 96-9p). Rather, Plaintiff cites provider notes that mention he attended the medical appointment with a cane and challenges the relevancy and adequacy of the medical records relied upon by the ALJ. Brief at 7-8. These arguments, even if accurate, do

not overcome the legal deficiency that no doctor prescribed the use of a cane nor dictated the circumstances under which it should be used. The law clearly establishes than an observation that the plaintiff used a cane does not establish the requisite medical necessity. See Cashin, 2010 WL 749884, at *11 (finding physician's observation of claimant's use of cane during examination was not "an objective finding that plaintiff's cane was medically required"); Flores, 2016 WL 2743228, at *14. Similarly, Plaintiff's argument regarding the quality and relevancy of the evidence does not undermine the ALJ's determination or establish medical necessity.  Plaintiff does not identify evidence indicating that the cane was prescribed or that a medical provider opined that a cane was needed to walk or stand and described the circumstances for which it was needed so, even if Plaintiff's arguments are accurate, they do not establish medical necessity or undermine the ALJ's decision. See Quintero v. Colvin, 2014 WL 4968269, at *10 (E.D. Cal. Sep. 29, 2014) ("Mentioning the use of a cane [in physicians' treatment notes] neither established Plaintiff needed the cane to balance or walk, nor described the circumstances for which the cane would be needed."). Moreover, the Court has reviewed the cited evidence and it supports the ALJ's determination that the cane is not medically required. Finally, Plaintiff's argument regarding the VA questionnaires also fails because the identified documents merely reflect Plaintiff's use of a cane and do not establish medical necessity or provide the circumstances governing Plaintiff's cane use. AR 931, 946; Quintero, 2014 WL 4968269, at *10.

Because there is no documentation in the record establishing that a cane was medically required nor describing the circumstances for which it was needed, the Court finds that the ALJ's decision to exclude Plaintiff's use of a cane in his RFC formulation was not error and was supported by substantial evidence.

### 2.  Plaintiff's Carpal Tunnel Syndrome

Plaintiff asserts that "the ALJ was … required to address the impact of Plaintiff's carpal tunnel syndrome on his ability to work [and notes the] RFC makes no mention of [Plaintiff]'s limitations regarding his hands." Id. at 9. Plaintiff argues that the ALJ erred when he found that Plaintiff's symptoms were improving with treatment as any improvement was slight. Id. (citing AR 527, 528, 530, 531). Plaintiff explains that "[w]hile the ALJ generally noted that [Plaintiff]

8

experienced improvement with treatment and generally referenced Exhibit 8F, Exhibit 8F actually noted that 'R hand weakness and pain not improved with OT… recommending repeat EMG and orthro consult as pt have significant hand weakness.'" Id. at 10. Plaintiff also points to an August 2019 consult regarding Plaintiff's right hand and argues it demonstrates Plaintiff's worsening right hand/wrist symptoms. Id. (citing AR 679). The report notes that Plaintiff stated his symptoms were exacerbated by use of a mouse on [sic] computer." Id. Plaintiff argues the ALJ's decision was harmful error "because the ALJ found that Plaintiff can return to his past work as an architectural drafter and a sterilizer as actually and generally performed [but the] ALJ did not address [Plaintiff]'s carpal tunnel syndrome which produces limitations that are particularly relevant" to those jobs. Id.; see also Reply at 2-3.

Defendant responds that because "the ALJ reasonably rejected Plaintiff's symptom allegations, including his claims of… hand limitations, the ALJ appropriately declined to incorporate those alleged limitations in the [RFC] finding." Oppo. at 7. Defendant asserts that "although Plaintiff alleged debilitating hand limitations due to carpal tunnel syndrome, the ALJ observed that Plaintiff reported working on his cars daily without any mention of hand limitations. Indeed, Plaintiff even told the clinician he 'just repaired a 2002 Ford F-150 this morning.'" Id. (citing AR 27, 549) (internal citations omitted).

a. ALJ's Discussion of Hand/Wrist Limitations in Plaintiff's RFC

The ALJ found Plaintiff's carpal tunnel syndrome to be nonsevere. AR 20-21. The ALJ discussed in detail why Plaintiff's hand and wrist limitations, including his carpal tunnel syndrome, do not meet or medically equal one of the listings in the SSR. Id. The ALJ explains,

> As for his left wrist, in August 2018, the [Plaintiff] reported ulnar neuropathy in his left hand, with diminished grip strength bilaterally. An EMG at that time revealed left carpal tunnel syndrome, as well as C7-8 radiculopathy bilaterally. He was treated with a home program and splint use. An examination in October 2018 revealed some diminished range of motion in his left wrist but normal motor examination, no evidence of pain with weight bearing, and no crepitus. An x-ray scan of the left wrist in December 2018 revealed findings that could represent ganglion cyst. However, at that time, he reported only minimal symptoms and

9

pain, and reported that it does not restrict his range of motion or limit his activities in any way. An examination indicated that he had active range of motion of the wrist and fingers without pain, he was able to make a full fist without difficulty, and he had no tenderness to touch. He removed the ganglion cyst in the left wrist in April 2019. Thereafter, in July 2019, he reported only minor symptoms in the left hand. Although an EMG in March 2020 revealed mild carpal tunnel syndrome with mild to moderate C7/C8 radiculopathy, it also revealed no significant cubital tunnel syndrome and no significant peripheral neuropathy. There was little evidence of treatment for this impairment thereafter. Despite the EMG findings, during the consultative examination in February 2022, he had normal grip and pinch strength, with no tenderness, synovial thickness, swelling, or erythema.

Id. (internal citations omitted). The ALJ continued by discussing Plaintiff's right wrist, stating,

Similarly, for his right wrist and hand, he reported pain, numbness and paresthesia in 2018. An examination in October 2018 revealed somewhat diminished range of motion, but normal ulnar and radial deviation of the right wrist, no evidence of pain with weight bearing, no crepitus, and normal motor exam. An EMG in March 2020 revealed moderate right carpal tunnel syndrome, as well as mild to moderate C7/C8 radiculopathy. However, there was no evidence of significant cubital tunnel syndrome or peripheral neuropathy. Despite these findings, during the consultative examination in February 2022, he had normal grip and pinch strength, with no tenderness, synovial thickness, swelling, or erythema. … Hence, this was treated routinely and conservatively, and there were many mitigating findings throughout the record.

Id. (internal citations omitted). The ALJ concluded that Plaintiff's "history of carpal tunnel syndrome… would have no more than a minimal effect on his ability to work during the timeframe in question, and therefore qualif[ies] as [a] "non-severe impairment[]" under the regulatory analysis. AR 21.

When formulating Plaintiff's RFC, the ALJ discussed Plaintiff's hand and wrist limitations, indicating,

There was also no evidence that he had an inability to use one or more of his upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross movements, as required under the listings. As indicated above, at times he had diminished range of motion in his wrists but still

10

had normal motor strength. During the consultative examination, he had intact range of motion in aspects with negative Tinel's and Phalen's and normal grip and pinch strength. He was able to make a fist and oppose the thumbs and fully extend his hands. Thus, he does not meet listings 1.15 and 1.18.

Id. at 22 (emphasis added and internal citations omitted). Based upon this analysis, the ALJ did not include any reaching or fingering limitations in Plaintiff's RFC.  Id. at 24.

    b.  <u>Analysis</u>

   The Court finds the ALJ properly considered Plaintiff's carpal tunnel syndrome symptoms and that there is substantial evidence in the record supporting the ALJ's decision to not include limitations based on Plaintiff's carpal tunnel syndrome. Initially, as set forth above, the ALJ conducted a lengthy analysis of Plaintiff's reported wrist and hand symptoms, including the carpal tunnel diagnoses, and the medical evidence related to them and then incorporated this analysis in his RFC determination. As a result, the ALJ conducted the required inquiry and applied the proper legal standard. See <u>Bayliss</u>, 427 F.3d at 1217. Contrary to Plaintiff's claims, the ALJ was not required to explicitly mention carpal tunnel syndrome when formulating the RFC. See <u>Craig H. v. Kijakazi</u>, 2023 WL 4679342, at *18 (S.D. Cal. July 21, 2023) (RFC determination need not precisely reflect exact descriptions of limitations but should synthesize all the medical evidence in the record).

   Second, there is substantial evidence in the record supporting the ALJ's decision.  With regard to Plaintiff's left hand and wrist, the ALJ cited medical records from August 2019 through February 2022.  AR 20-21.  Plaintiff's carpal tunnel syndrome was diagnosed in August 2018 and initially treated with a "home program and splint use."  Id. at 20 (citing Exh. 8F/270, 307). In October 2018, an examination revealed a "diminished range of motion" but "normal motor examination [and] no evidence of pain with weight bearing."  Id. (citing Exh. 8F/372-375).  In December 2018, an x-ray revealed a ganglion cyst but Plaintiff "reported only minimal symptoms and pain" and no restriction in his range of motion or limitation in his activities. Id. (citing Exh. 8F/302-304).  The examination confirmed Plaintiff "had active range of motion of the wrist and fingers without pain, he was able to make a full fist without difficulty, and he had no tenderness

to touch." Id.  After the removal of the ganglion cyst in 2019, Plaintiff "reported only minor symptoms.  Id. (citing Exh. 8F/113).  An EMG in March 2020 revealed mild carpal tunnel syndrome and minimal treatment.  Id. (citing Exh. 8F/73).  Similarly, in February 2022, an EMG revealed Plaintiff's carpal tunnel syndrome exam was within normal limits as Plaintiff had normal grip and pinch strength, no tenderness, and intact range of motion with an ability to "make a fist and oppose thumbs and fully extend his hands." Id. at 21 (citing Exh. 7F/4-7).  The Court has reviewed the cited records and they support the ALJ's findings and conclusion.  See, e.g., AR 836 (in August 2018, Plaintiff is diagnosed with left wrist carpal tunnel syndrome and prescribed pillow splint and wrist splint); AR 938-39 (October 2018 VA Questionnaire, examination of the left wrist revealed no functional loss or pain but did demonstrate reduced range of motion); AR 868-70 (December 2018 x-ray revealed left wrist ganglion cyst, but Plaintiff had full range of motion and no pain); AR 678-79 (August 2019 examination demonstrated "minor" symptoms but improvement in the left wrist following removal of the ganglion cyst); AR 639 (March 2020 telephonic encounter note reveals Plaintiff's left wrist has "mild" carpal tunnel syndrome but no worsening symptoms since 2018); AR 555-60 (February 2022 examination of Plaintiff's left wrist showed no tenderness, palpation, or swelling; Plaintiff has regular range of motion and flexion, and no issues noted whatsoever). The Court also notes that the record supports the ALJ's conclusion regarding the level of treatment as Plaintiff infrequently consulted a medical provider for his carpal tunnel syndrome and, other than the removal of the cyst, received minimal treatment and expressed minor symptoms. See id. at 559, 639, 678, 868, 939.

Turning to Plaintiff's right wrist and hand, the ALJ cited Plaintiff's medical records from the same timeframe as Plaintiff's left wrist. AR 21. Plaintiff's carpal tunnel syndrome in his right wrist was diagnosed at the same time as Plaintiff's left wrist and was treated with the same at-home program – pillow and wrist splints. Id. at 20 (citing Exh. 8F/270, 307). An October 2018 examination of the right wrist demonstrated diminished range of motion, but normal ulnar and radial deviation and no evidence of pain, crepitus, and a normal motor exam. Id. (citing Exh. 8F/372-75). A March 2020 EMG revealed moderate right wrist carpal tunnel syndrome and mild

C7/C8 radiculopathy[1], but there was no indication of significant cubital tunnel syndrome or peripheral neuropathy. Id. (citing 8F/73). At a February 2022 examination, Plaintiff's right wrist had fully intact range of motion, normal pinch and grip strength, no swelling, erythema or tenderness, and he was able to make a fist and oppose thumbs while fully extending his hands. Id. (citing 7F/7-8). The Court has also reviewed these cited records and they fully support the ALJ's findings and conclusions. See AR 836 (in August 2018, an examination of Plaintiff's right wrist revealed carpal tunnel syndrome and Plaintiff is prescribed pillow splints and wrist splints); AR 938-39 (October 2018 VA Questionnaire, examination of the right wrist revealed no functional loss or pain but did demonstrate reduced range of motion and slight tenderness); AR 639 (a March 2020 EMG finding revealed moderate carpal tunnel syndrome in Plaintiff's right wrist, but there was no evidence of cubital tunnel syndrome or peripheral neuropathy); AR 557-60 (in February 2022, Plaintiff's right wrist had normal grip and pinch strength, with no tenderness, synovial thickness, swelling, or erythema, and he had intact range of motion in all aspects, negative Tinel's and Phalen's, he could make a fist and oppose the thumbs to fully extend his hands). Again, the record supports the ALJ's findings and conclusions regarding Plaintiff's right wrist as it was also treated conservatively, Plaintiff infrequently sought treatment, and Plaintiff's reported symptoms improved during the relevant period. See id. at 557-60, 639, 836, 938-39.

Plaintiff argues that the ALJ misinterpreted Exhibit 8F and that Dr. Beazley's records do not support the ALJ's decision.  Brief at 9-10; Reply at 3.  Initially, the Court notes that Exhibit 8F is 382 pages long and includes medical records from August 22, 2018 through March 31, 2022. AR Court Transcript Index; AR 567-948.  Plaintiff identifies two pages[2], AR 640 and 679,

---

[1] Cervical radiculopathy (also known as "pinched nerve") is a condition that results in radiating pain, weakness and/or numbness caused by compression of any of the nerve roots in your neck. See Iyer S, Kim HJ. Cervical Radiculopathy *(https://pubmed.ncbi.nlm.nih.gov/27250042/). Curr Rev Musculoskelet Med*. 2016; 9(3): 272-280. Cervical Radiculopathy (Pinched Nerve in Neck): Symptoms & Treatment (clevelandclinic.org)

[2] The Court notes that Plaintiff also identified records at AR 527-531 as supporting Plaintiff's current position that there should have been limitations regarding his hands and wrist.  Brief at 9.  These records appear to contain the same records as AR 836-839, which were considered

1    and from those two pages asserts that the ALJ only generally referenced Exhibit 8F and that his

2    statements were inaccurate. Brief at 10. Plaintiff's assertions are incorrect and misleading.  As

3    set forth above, the ALJ referenced many of the medical records contained in Exhibit 8F covering

4    care from 2018 through 2022 and provided citations to the relevant medical record.  See AR 20-

5    21.   Furthermore, the medical records on page 640 reflect that in August 2019, Plaintiff

6    complained that his CTS symptoms in his left hand have not improved and the nurse practitioner

7    requested a repeat EMG and ortho consult and in March 2020, Dr. Beazley reviewed Plaintiff's

8    new EMG which indicated the CTS had progressed and submitted an ortho hand consult.  AR

9    640.  The medical records on page 679 are from July 2019 and in them, the doctor notes that

10   Plaintiff is complaining about CTS and pain in his right wrist and recommends repeat EMG and

11   ortho consult. AR 679.  In contrast to Plaintiff's argument, the doctors did not make independent

12   findings regarding Plaintiff's symptoms, including the exacerbation with computer use, but

13   merely noted Plaintiff's complaints.  AR 640, 679.  Dr. Beazley did not opine that Plaintiff had

14   limitations in work activities or find that he could not or should not use a computer or mouse.

15   Id.  In addition, the cited records are from 2018 and 2019.  The ALJ acknowledged those tests,

16   medical records, and Plaintiff's claims in his analysis and discounted them based on the routine

17   and the conservative treatment and minimal ongoing care that occurred after 2019.  AR 20-21.

18   The ALJ also stated that he discounted some of the doctor's opinions regarding Plaintiff's hand

19   and wrist symptoms because they improved with treatment and were not consistent over time.

20   AR 30.  Plaintiff does not identify records undermining the ALJ's analysis and the record supports

21   the ALJ's conclusion.

22       In sum, the ALJ thoroughly reviewed all of the medical records regarding Plaintiff's hand

23   and wrist limitations, including his carpal tunnel syndrome, and provided valid reasons for not

_____

25   by the ALJ.  The records are from August 2018, reflect that an EMG revealed carpal tunnel
26   syndrome in Plaintiff's left, non-dominant hand with grip strength significantly below average,
     and recommend that Plaintiff use splints and engage in a home program involving activity
27   modification, ergonomics and education. AR 527-31.  The ALJ considered these medical records
     as well as the other relevant medical records, including records after 2018, in determining
28   Plaintiff's RFC.  AR 20.

including such limitations in the RFC.[3]  There is substantial evidence in the record supporting the ALJ's determination and the ALJ was not required to discuss carpal tunnel syndrome by name when formulating Plaintiff's RFC, especially given the lengthy discussion of Plaintiff's hand and wrist limitations. Thus, the ALJ's decision on this issue must be upheld. See Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) (when the ALJ's decision is supported by substantial evidence and the proper legal standard is applied, even "[i]f the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld....") (citation and internal quotation marks omitted).

## B. **Plaintiff's Subjective Symptom Testimony**

Plaintiff argues that the ALJ failed to provide "specific, clear and convincing" reasons for rejecting Plaintiff's testimony regarding the severity of his symptoms and improperly evaluated the objective medical evidence and Plaintiff's daily activities.  Brief at 10-17.  Defendant responds that the ALJ properly explained and adequately supported his decision to discount Plaintiff's subjective symptom claims.  Oppo. at 2-5.

The Ninth Circuit has established a two-part test for evaluating a plaintiff's subjective symptom testimony. See Zuniga v. Saul, 801 Fed. Appx. 465, 466 (9th Cir. 2019) (citing Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009)). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)). The claimant need not prove that the impairment reasonably could be expected to produce the alleged degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce some degree of pain or other symptom. See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Smolen v. Charter, 80 F.3d 1273, 1282 (9th Cir. 1996)). If the claimant

---

[3] As discussed in the next section, the ALJ considered Plaintiff's claims and testimony that he had debilitating pain in his hands and wrists, but properly discounted Plaintiff's subjective claims based upon the objective medical evidence and his medical treatment and daily activities.

satisfies the first element "and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of her symptoms if she gives 'specific, clear and convincing reasons' for the rejection." Zuniga, 801 Fed. Appx. at 466 (quoting Lingenfelter, 504 F.3d 1028, 1036). When a claimant presents objective medical evidence "establishing an impairment that could 'reasonably produce the symptoms of which she complains, an adverse credibility finding must be based on clear and convincing reasons.'" Smartt v. Kijakazi, 53 F.4th 489, 497 (9th Cir. 2022) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008)). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Werlein v. Berryhill, 725 Fed. Appx. 534, 535 (9th Cir. 2018) (quoting Tommasetti, 533 F.3d at 1039 (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)).

When weighing the claimant's testimony, "an ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citation omitted). An ALJ also may consider the claimant's work record and testimony from doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which the claimant complains. Lenhart v. Astrue, 252 Fed. Appx. 787, 788 (9th Cir. 2007) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)); see also 20 C.F.R. § 404.1529(c). If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision. See Carmickle, 533 F.3d at 1162-63 (9th Cir. 2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence … in the record[.]" Id. at 26. Because the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged

16

symptoms – a finding not contested by either party – the first prong of the ALJ's inquiry is satisfied. <u>See</u> Brief at 12; Oppo. at 2; <u>see also</u> <u>Lingenfelter</u>, 504 F.3d at 1036. Furthermore, neither party alleges nor argues that the ALJ found Plaintiff was malingering. <u>See</u> Brief; Oppo. As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his functional limitations. <u>See</u> <u>Lingenfelter</u>, 504 F.3d at 1036.

The ALJ provided several reasons for discounting Plaintiff's subjective symptom claims. AR 25-31. Plaintiff challenges the ALJ's reliance on Plaintiff's daily activities and Plaintiff's routine and conservative treatment. Brief at 10-17; Reply at 3-5. Plaintiff also attempts to challenge the ALJ's determination that the objective medical evidence does "not support a more restrictive residual functional capacity" but Plaintiff presents no argument other than to state that "[t]he ALJ is mistaken regarding what he is to consider when evaluating [Plaintiff's] statements. Objective evidence is "one of the many factors" that the ALJ must consider when evaluating subjective statements." Brief at 13.   The Court will address each of these arguments.

### 1. Objective Medical Evidence

The Ninth Circuit recently revisited the law governing how ALJs may consider objective medical evidence and inconsistent statements. <u>Smartt</u>, 53 F.4th at 496. In <u>Smartt</u>, among other arguments, the plaintiff appealed her denial of Social Security disability insurance benefits on the grounds that the ALJ erred in discounting her subjective pain testimony and self-reported limitations. <u>Id.</u> at 496-97. The plaintiff relied on <u>Burch v. Barnhart</u>, 400 F.3d 676 (9th Cir. 2005) and correctly argued that an ALJ may not "reject a claimant's subjective complaints based solely on lack of medical evidence to fully corroborate the alleged severity of pain." <u>Smartt</u>, 53 F.4th at 498 (quoting <u>Burch</u>, 400 F.3d at 680). However, the <u>Smartt</u> court clarified that "[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." <u>Id.</u> The court explained that prior Ninth Circuit decisions make clear that "an ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly

contrary to' the Social Security Act" and contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony. Id. at 499.

Here, the ALJ found that "[t]he objective findings on the record do not support a more restrictive residual functional capacity" than the one imposed.  AR 28.  The ALJ then sets forth a careful and detailed analysis of the objective evidence relating to Plaintiff's subjective complaints including his back, hip, knee, use of a cane, and mental impairments.  Id. at 28-29. The ALJ then summarizes the record as a whole and explains why it supports the RFC he imposed.  Id. at 29.

In sharp contrast to the ALJ's detailed analysis, Plaintiff merely notes that the ALJ relied on the objective medical evidence and then explains that it is only one of many factors the ALJ must consider.  Brief at 12-13.  Plaintiff does not identify which subjective symptoms he believes were improperly evaluated by the ALJ with regard to the objective medical evidence nor does he identify the objective medical evidence that he believes supports any specific claim.  Brief at 12-13.  Despite Plaintiff's lack of argument, the Court has reviewed the ALJ's analysis and decision and finds there is substantial evidence supporting the ALJ's conclusion that the objective medical evidence supports his determination to discount Plaintiff's subjective claims.

As part of his analysis, the ALJ summarized Plaintiff's testimony during the hearing [AR 49-56], the Adult Function Report [Exh. 6E] and Pain Questionnaire [Exh. 5E] prepared by Plaintiff, and the Third-Party Adult Function Report completed by Plaintiff's son [Exh. 4E]. AR 25.  The Court has reviewed cited the documents and finds the ALJ's summaries accurately reflect the information set forth in the reports and the substance of Plaintiff's testimony.  The ALJ considered the claims set forth in the documents and Plaintiff's testimony, compared the objective medical evidence to the claims, and determined the evidence did not support the extent of Plaintiff's subjective claims.  AR 25-29.  As an example, Plaintiff testified that he has pain in his knees, hips, and back, can only sit or stand for about 10-15 minutes, and can only walk for about 25 yards. AR 49-50.  The objective medical evidence revealed evidence of normal gait, normal sensory, motor, and reflex exams, and no general unilateral muscle weakness. Id. at 634, 705, 707, 712, 916-17. Similarly, the medical records relating to Plaintiff's hip showed

there was no evidence of weight bearing pain and he had normal range of motion bilaterally [AR 919], normal motor strength and only stable mild degenerative changes of the sacroiliac joint. AR 705, 707, 919, 922. Plaintiff's knees had only localized tenderness and only slightly abnormal range of motion that had no effect on his motor strength or stability, and did not cause him pain with weight bearing. AR 925-929. During a February 3, 2022 complete internal medicine evaluation, Plaintiff had no numbness, tingling, or weakness of the bilateral lower extremities; slight tenderness over his lumber spine but with normal range of motion; tenderness and palpation over the medial and lateral plateau of his knees; but otherwise, the remaining findings were within normal limits. AR 554-61. In addition, as discussed above, there was substantial evidence establishing Plaintiff could walk without a cane and no doctor opined that Plaintiff needed a cane to walk or stand.

The Court finds there is substantial evidence supporting the ALJ's conclusion that the objective medical record is inconsistent with the self-reported limitations claimed by Plaintiff and that this is a legitimate reason to discount Plaintiff's subjective testimony. See Smartt, 53 F.4th at 498. The Ninth Circuit has upheld decisions where the ALJ found objective medical evidence in the record to be inconsistent with a plaintiff's subjective testimony and weighed it as undercutting such testimony. See, e.g., Chaudhry v. Astrue, 688 F.3d 661, 672–73 (9th Cir. 2012) (affirming an ALJ's determination that interpreted and preferred objective medical evidence to subjective testimony); Burch, 400 F.3d at 681 (affirming an ALJ's discounting of subjective claims of disabling pain based on objective medical evidence and a claimant's daily activities); Thomas, 278 F.3d at 959 (affirming an ALJ's decision discounting a claimant's testimony after "finding no objective medical evidence to support [claimant's] descriptions of her pain and limitations," and "that [claimant] was able to perform various household chores such as cooking, laundry, washing dishes, and shopping"); Osenbrock v. Apfel, 240 F.3d 1157, 1165–66 (9th Cir. 2001) (affirming an ALJ's rejection of allegations of disabling pain based on normal physical examinations). The Court finds that the inconsistency between Plaintiff's subjective claims and the objective medical evidence regarding his self-reported limitations is a valid and permissible reason for discounting Plaintiff's claims, and the ALJ's discussion of why

1  and for what reasons the Plaintiff's testimony was inconsistent with the medical evidence in the

2  record is supported by substantial evidence.

3           **2.  Activities of Daily Living**

4       A second reason the ALJ provided for discounting Plaintiff's subjective symptom testimony

5  was that his activities of daily living were "inconsistent with his allegations and the presence of

6  a debilitating disorder." AR 27.

7       In determining a plaintiff's credibility, an ALJ may consider whether a plaintiff's daily

8  activities are consistent with the asserted symptoms. See Thomas, 278 F.3d at 958–59 (quoting

9  Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). While the fact that a plaintiff can

10  participate in various daily activities does not necessarily detract from the plaintiff's credibility

11  as to her specific limitations or overall disability, "a negative inference is permissible where the

12  activities contradict the other testimony of the claimant, or where the activities are of a nature

13  and extent to reflect transferable work skills." Elizondo v. Astrue, 2010 WL 3432261, at *5 (E.D.

14  Cal. Aug. 31, 2010). "Daily activities support an adverse credibility finding if a claimant is able

15  to spend a substantial part of her day engaged in pursuits involving the performance of physical

16  functions or skills that are transferable to a work setting." Id. (citing Orn, 495 F.3d at 639;

17  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).; Thomas, 278 F.3d

18  at 959). "A claimant's performance of chores such as preparing meals, cleaning house, doing

19  laundry, shopping, occasional childcare, and interacting with others has been considered

20  sufficient to support an adverse credibility finding when performed for a substantial portion of

21  the day." Id. at *5 (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008);

22  Burch, 400 F.3d at 680–81; Thomas, 278 F.3d at 959; Morgan, 169 F.3d at 600; Curry v. Sullivan,

23  925 F.2d 1127, 1130 (9th Cir. 1990)).

24       Plaintiff argues that "the ALJ failed to articulate how Mr. Velasquez's statements were

25  inconsistent with his daily activities or, alternatively, failed to make any findings that Mr.

26  Velasquez was able to spend a substantial part of the day engaged in pursuits that were

27  transferrable to a work setting." Brief at 15. Similarly, Plaintiff explains that "the ALJ

28  mischaracterized the record regarding Mr. Velasquez's work on cars" and by misrepresenting

1   Plaintiff's statements about a "debilitating disorder."  Id. Consequently, Plaintiff asserts that that

2   the ALJ improperly relied on Plaintiff's activities of daily living when discounting Plaintiff's

3   subjective symptom testimony. Id.

4         Defendant contends that "Plaintiff alleged debilitating physical and mental limitations,

5   including problems using his hands, bending, and completing tasks. Yet, when asked by a

6   clinician about daily hobbies, Plaintiff reported he 'work[ed] on cars all the time.'" Oppo. at 3

7   (quoting AR 27, 549) (alteration in original). Defendant points to Plaintiff's statements at the

8   hearing pertaining to his daily activities aside from working on cars, including "bathing daily,

9   preparing meals, washing dishes, doing chores, and doing 'other work around the house as

10  needed when requested by his wife.'" Id. (quoting AR 550). Defendant notes that the ALJ

11  correctly mentioned that Plaintiff worked sporadically throughout the relevant period in which

12  he claimed to be disabled. Id. (citing AR 27).

13        Where daily activities "contradict claims of a totally debilitating impairment," they may be

14  grounds for discounting a plaintiff's testimony. Keigley v. Kijakazi, 2022 WL 856021, at *6 (E.D.

15  Cal. Mar. 23, 2022) (quoting Molina, 674 F.3d at 1112-13 (internal citations omitted), superseded

16  on other grounds by 20 C.F.R. § 416.920(a)). Here, Plaintiff testified about debilitating pain and

17  an inability to engage in a variety of activities.  Plaintiff testified that the pain in his knees, hips,

18  back, hands, and "inside" were significant problems that affect his ability to work. AR 48-50.

19  Plaintiff explained that he had to change his position from sitting to standing every 10-15

20  minutes with stretching in between. Id. at 49. Plaintiff testified he could only walk 25 yards

21  before becoming uncomfortable. Id. at 50.  Plaintiff also testified that when he uses a computer

22  or mouse his "hands go numb quickly" and he needs two to three minutes for the pain to

23  subside. Id. at 50.  With regard to his shoulders, Plaintiff testified that if he carries more than

24  about ten pounds, he experiences pain which then hurts his back and knees.  Id. at 51.  Plaintiff

25  claimed that he cannot extend his arms for more than about ten minutes or he will experience

26  pain in his shoulders and hands.  Id.  In finding that Plaintiff's subjective claims were undercut

27  by his daily activities, the ALJ noted that Plaintiff reported that he worked sporadically

28  throughout the relevant time period and enjoyed working on cars.  AR at 27.  This finding is

supported by the record.  See AR 54-56 (Plaintiff testified that he worked intermittently from 2019 through the date of the hearing doing architectural drafting on a contract basis); Id. at 54-55 (Plaintiff testified that his hobby is working on cars and that he spends 1.5-2 hours per day doing activities related to his four cars); AR 549 (in response to a question about hobbies, Plaintiff told a medical examiner in January 2022 that he "work[s] on cars all the time. I just repaired a 2002 Ford F150 this morning.").  Finally, the ALJ noted that Plaintiff was able to participate in a variety of activities, including driving, using his computer, reading emails, texting on his phone, paying bills, taking care of his pet, and performing household chores.  Id. at 27. Again, these activities were admitted by Plaintiff and supported by the record.  Id. at 52-53; 550.

Plaintiff analyzes his hearing testimony and argues that the ALJ mischaracterized Plaintiff's ability to work on cars.  Brief at 15.  While Plaintiff's testimony during the administrative hearing is somewhat unclear, when it is combined with Plaintiff's statements to the medical examiner, there is evidence supporting the ALJ's conclusion that Plaintiff's daily activities involving his car hobby are inconsistent with the degree of his subjective complaints.[4]  Moreover, even if Plaintiff's car activities are not as physically or mentally demanding as indicated, Plaintiff's work activities and other daily activities provide substantial evidence supporting the ALJ's conclusion that Plaintiff's activities were inconsistent with the level of functioning Plaintiff alleged.  Id.  "When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." Batson v. Comm'r, Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004) (quoting Andrews, 53 F.3d at 1041).

---

[4] The ALJ noted that Plaintiff's testimony that he only worked on cars for up to two hours per day was inconsistent with his statement to a consultative examiner that he worked on cars "all the time." AR 27; see also id. at 549 (Plaintiff told the examiner on January 20, 2022, "Yes, I work on cars all the time. I just repaired a 2002 Ford F150 this morning."). These inconsistencies provide another clear and convincing reason for discounting Plaintiff's subjective testimony and discounting his credibility. See Orn, 495 F.3d at 636 (finding an ALJ may properly evaluate inconsistencies in testimony when determining a Plaintiff's reputation for truthfulness).

Plaintiff also argues that the ALJ erred because he failed to establish that Plaintiff's daily activities involved skills that "were transferrable to a work setting."  Brief at 14-15. "The Ninth Circuit has noted that there are 'two grounds for using daily activities to form the basis of an adverse credibility determination': Evidence of the daily activities either (1) contradicts the claimant's other testimony, or (2) meets the threshold for transferable work skills." Steele v. Berryhill, 2018 WL 2718033, at *3 (S.D. Cal., June 6, 2018) (quoting Orn, 495 F.3d at 639) (emphasis added). Here, the ALJ is relying on the first ground and was not required to translate Plaintiff's activities into full-time work.

Accordingly, there is substantial evidence supporting the ALJ's determination that Plaintiff's activities of daily living were not consistent with his testimony and claims regarding his subjective symptoms and that this basis is a clear and convincing reason to discount Plaintiff's testimony and claims.

### 3.  Conservative Treatment

Another reason provided by the ALJ for discounting Plaintiff's testimony regarding his subjective symptoms was that the degree of Plaintiff's claims was not supported by the "frequency or extent of treatment sought by [Plaintiff]. AR 27.  The ALJ explained

> [t]he degree of the claimant's subjective complaints is not comparable to the frequency or extent of treatment sought by the [Plaintiff].  The [Plaintiff's] treatment regimen for his impairments was routine and conservative.  For his lower back, hips and knee pain, he underwent physical therapy and was treated with NSAIDs.  He also received injections for his knees.  However, there was no evidence that he had significant worsening or exacerbation of his symptoms requiring more aggressive treatment.  Although he had treatment visits around every month, he did not report or complain of his back, hip, or knee pain during many of his visits and only sporadically brought up his pain (8F).  Similarly, his mental impairments were treated conservatively, psychotropic medication, and he did not have any significant worsening of symptoms requiring more aggressive treatment, such as in-patient hospitalization.

Id. at 27-28.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of impairment." Smartt, 53 F.4th at 500 (quoting Parra, 481 F.3d at 751). Failure to follow prescribed treatment also may "cast doubt on the sincerity of the claimant's

pain testimony." Trevizo v. Berryhill, 871 F.3d 664, 680 (9th Cir. 2017) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (superseded by statute)).

Plaintiff argues that the ALJ incorrectly found that Plaintiff's treatment had been conservative, citing to evidence in the record demonstrating that Plaintiff underwent surgery on his left wrist, took psychotropic medication, and received injections in his knees, treatments that Plaintiff contends are not conservative under Ninth Circuit precedent. Brief at 17. Plaintiff asserts that "surgery and injections are not conservative treatment" and "an ALJ's reliance on a claimant's conservative treatment history is misplaced when there is no indication that more aggressive treatment options are appropriate or available." Id. at 16.  Defendant does not address this argument in his opposition. See Oppo.

Initially, the Court notes that Plaintiff does not challenge the ALJs conclusion that the extent and frequency of Plaintiff's treatment for his hips and back are inconsistent with the subjective claims asserted by Plaintiff.  See Brief at 15-17; Reply at 3-5. With regard to Plaintiff's knee injections, Plaintiff does not identify any medical records showing such medical treatment and the only medical record cited by the ALJ is a March 7, 2019 email sent by Plaintiff to his medical provider stating that he received a knee injection in June 2018 and he would like to schedule another one. AR 26, 764.  Since Plaintiff apparently only needed the injection once every 9 to 10 months, the record supports the ALJ's conclusion that the infrequency of the treatment does not support the extent of the pain and limitations claimed by Plaintiff.[5] See Venedicto v. Kijakazi, 2022 WL 4537902, at *5 (E.D. Cal. Sep. 28, 2022) (finding infrequent cortisone injections to be conservative treatment).  The ALJ's conclusion is bolstered by Plaintiff's other medical records which show that his knees only had localized tenderness and slightly abnormal range of motion that had no effect on his motor strength or stability and did not cause

---

[5] Whether the Plaintiff's knee injections should be considered "conservative" is unclear given the law in the Ninth Circuit and the lack of documentation in this case. Compare, Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir. 2017) (finding epidural steroid injections to the neck and lower back are not conservative treatment); with, Venedicto v. Kijakazi, 2022 WL 4537902, at *5 (E.D. Cal. Sep. 28, 2022) (finding infrequent cortisone injections to be conservative treatment).

him pain. AR 925-929.  With regard to his wrists, and as discussed in more detail above, Plaintiff's treatment was infrequent and conservative.  While Plaintiff had surgery to remove a ganglion cyst from his left wrist, the medical records establish that Plaintiff had minimal and infrequent follow up care and little to no limitations or pain in Plaintiff's wrists following the procedure.  See AR 938-40; see also Fields v. Astrue, 2008 WL 4384248, *7 (C.D. Cal. Sep. 3, 2008) (finding unilateral ganglion cyst surgery as conservative treatment and a sufficient basis to discredit the plaintiff's pain testimony).  Accordingly, there is sufficient evidence in the record to support the ALJ's conclusion that the extent and nature of Plaintiff's medical treatment for his legs, knees, wrists, and back do not support the extent of his subjective claims.

The Court agrees with Plaintiff's argument that the ALJ erred by finding Plaintiff's psychotropic medication prescriptions were conservative treatment. Similarly, the Court agrees with Plaintiff's argument that a claimant need not be hospitalized for a psychiatric diagnosis to for treatment to be non-conservative. Plaintiff was prescribed Duloxetine (Cymbalta, Zoloft) and Bupropion (Wellbutrin, Zyban) for his anxiety and depression. AR 27, 754. Courts in the Ninth Circuit have long established that medication treatment regimens with psychiatric medications such as the Cymbalta and Zoloft are not conservative. See, e.g., Green v. Berryhill, 2018 WL 4291960, at *5 (D. Nev. Aug. 20, 2018) ("The Ninth Circuit and other courts have recognized within the context of mental health conditions that the prescription of psychiatric medications is not indicative of conservative treatment.") (citing Drawn v. Berryhill, 728 Fed. Appx. 637, 642 (9th Cir. 2018)); Mason v. Colvin, 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013) (finding plaintiff's treatment not conservative because she took prescription antidepressants and other medications and received mental health treatment from a psychiatrist and social worker); Maria B. v. Saul, 2020 WL 11884826, at *7 (C.D. Cal. Oct. 30, 2020) (finding Zoloft prescription not conservative); Wilson v. Berryhill, 2018 WL 6321629, at *4 (C.D. Cal. Jul. 9, 2018) (finding Wellbutrin and Zoloft prescriptions not conservative); Gay I. v. Kijakazi, 2022 WL 220918, at *5 (C.D. Cal. Jan. 24, 20222) (finding Wellbutrin and Zoloft prescriptions not conservative);  see also SSR 16-3p, at *9 ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or

changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show they are intense and persistent"). Nor must a claimant undergo psychiatric hospitalization to be considered disabled. Torquato v. Berryhill, 2018 WL 3064568, at *6 (S.D. Cal. Jun. 20, 2018); Matthews v. Astrue, 2012 WL 1144423, at *9 (C.D. Cal. Apr. 4, 2012). While the ALJ erred in concluding that Plaintiff's "mental impairments were treated conservatively," Plaintiff does not explain how the error impacted the RFC determination. Brief at 17; Reply at 4. For example, Plaintiff does not identify any symptom testimony the ALJ improperly discounted based on the psychiatric treatment Plaintiff received for his anxiety and depression. Id. Moreover, the ALJ included a limitation in the RFC that Plaintiff "can only have occasional work-related general public contact" and this limitation was based on Plaintiff's stated "anxiety around crowds." AR 24, 29. Accordingly, the nature and extent of Plaintiff's treatment provides another clear and convincing reason to discount Plaintiff's subjective claims.

For the reasons set forth above, the Court finds that the ALJ provided numerous valid reasons for discounting Plaintiff's subjective claims and that there is substantial evidence supporting the ALJ's reasons. See Carmickle v. Commissioner, 533 F.3d at 1162-63; Moisa v. Barnhart, 367 F.3d at 885. The Court therefore defers to the ALJ's credibility determination. See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to Administration's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1464 (9th Cir. 1995).

## **CONCLUSION**

For the reasons set forth above, this Court **RECOMMENDS** Plaintiff's Brief be **DENIED** and that the Commissioner's decision be upheld.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **July 12, 2024**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 26, 2024**. The parties are advised that failure to

file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  6/27/2024

Hon. Barbara L. Major
United States Magistrate Judge

27