UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL V.,<br><br>        Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY,[1]<br><br>        Defendant. | Case No.: 23-CV-01683-RBM-BLM<br><br>**ORDER:**<br><br>**(1) OVERRULING PLAINTIFF'S OBJECTIONS**<br><br>**(2) ADOPTING REPORT AND RECOMMENDATION**<br><br>**(3) AFFIRMING ALJ DECISION**<br><br>**[Docs. 9, 10, 13-14]** |

  Plaintiff Miguel V.[2] (hereinafter "Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) seeking review of the denial of his application for Social Security disability benefits. (Doc. 1.) Plaintiff filed a merits brief (hereinafter, "Plaintiff's Motion")

---

[1] Martin O'Malley is now the Commissioner of Social Security, and he is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to Civil Local Rule 7.1(e)(6)(b), the Court refers to Plaintiff by first name and last initial.

1

seeking reversal of the Administrative Law Judge's ("ALJ") decision[3] finding Plaintiff not disabled and denying him benefits. (Doc. 9.) Defendant filed a Responding Brief (hereinafter "Defendant's Response") seeking affirmance of the ALJ's decision. (Doc. 10). Plaintiff filed Plaintiff's Reply to Defendant's Response (hereinafter "Plaintiff's Reply") (Doc. 12).

The Honorable Barbara L. Major, United States Magistrate Judge issued a Report and Recommendation (hereinafter, "R&R") recommending the ALJ's decision be affirmed. (Doc. 13.) Plaintiff raised two Objections to the Magistrate Judge's R&R (hereinafter "Objections"). (Doc. 14.) Defendant filed a Response to Plaintiff's Objections (hereinafter, "Response to Objections"). (Doc. 15.) The Court has considered the parties' initial briefing, the R&R, and the parties' briefs on Plaintiff's Objections. Having conducted a de novo review of the issues to which Plaintiff has objected, for the reasons discussed below, the Court **OVERRULES** Plaintiff's Objections, **ADOPTS** the R&R and **AFFIRMS** the ALJ's decision.

## I.   BACKGROUND

The R&R summarizes the Procedural Background and provides a Summary of the ALJ's Findings. (Doc. 13 at 1–4.) The Court adopts the R&R's Procedural Background and Summary of the ALJ Findings sections in their entirety and only highlights a few specific points from the ALJ decision here.

The ALJ found Plaintiff "has the following severe impairments: osteoarthritis and degenerative disc disease of the lumbar spine, bilateral knee osteoarthritis, osteoarthritis and degenerative joint disease of the hips, major depressive disorder, and generalized anxiety disorder with insomnia." (AR 20.) The ALJ found Plaintiff's "medically determinable impairments of shoulder tendinitis, history of ganglion cyst in the left wrist, history of carpel tunnel syndrome, right ankle pain, and obesity cause only slight

---

[3] The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's Request for Review.

abnormalities that would have no more than a minimal effect on his ability to work during the timeframe in question, and therefore qualify as 'non-severe impairments' under the regulatory analysis." (AR 20–21.) The ALJ found Plaintiff's combination of impairments did not meet a Listing and specifically discussed Listings 1.15 and 1.18. (AR 22–24.)

The ALJ assessed the following Residual Functional Capacity ("RFC"):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: He cannot climb ladders, ropes, scaffolds, but can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; He must avoid concentrated exposure to extreme cold and hazards such as unprotected heights and work around dangerous moving machinery; and he can only have occasional work-related general public contact.

(AR 24.)

In support of the RFC, the ALJ specifically discussed Plaintiff's testimony, Adult Function Report, Pain Questionnaire, and a Third-Party Adult Function Report. (AR 24–25.) The ALJ also discussed Plaintiff's medical history, treatment, claimed limitations, and daily activities at length in considering Plaintiff's statements regarding the severity of his symptoms. (AR 25–29.) The ALJ also evaluated numerous physician opinions in detail. (AR 29–31.) After discussing Plaintiff's vocational background and summarizing the testimony of a vocational expert, the ALJ concluded Plaintiff was able to perform his past relevant work as an architectural drafter and sterilizer. (AR 31–32.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties in connection with a magistrate judge's report and recommendation. The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). The district court is

not required to conduct "any review at all," de novo or otherwise, of any issue that is not the subject of an objection. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."). The portions of the R&R Plaintiff has not objected to are **ADOPTED**.

The Court "may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)). "Substantial evidence ... is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Id.*

### III.  DISCUSSION

Plaintiff raises two Objections to the Magistrate Judge's R&R. (Doc. 14.) He objects that: (1) the ALJ's RFC for Plaintiff does not account for his carpel tunnel syndrome (*id.* at 1–2); and (2) that the ALJ erred by failing to properly evaluate Plaintiff's statements as to the objective findings (*id.* at 2–5). The Court addresses each of Plaintiff's Objections below.

#### A.  RFC and Carpel Tunnel Syndrome

The RFC does not include limitations addressing Plaintiff's carpel tunnel syndrome. (AR 24.) Having considered Plaintiff's Objection and conducted a de novo review of this issue, the Court finds the ALJ's decision on this point is without legal error and supported by substantial evidence. Courts must "affirm the ALJ's determination of [an] RFC if the ALJ applied the proper legal standard and [the] decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2006) (citations omitted).

The general question raised in this objection is whether the ALJ's RFC was defective because it lacked limitations related to Plaintiff's carpel tunnel syndrome. However,

Plaintiff appears to raise two issues on this point: (1) whether the ALJ considered an impairment the ALJ found to be non-severe—Plaintiff's carpel tunnel syndrome—in determining Plaintiff's RFC as the ALJ is required to do; and (2) if the ALJ's decision not to include limitations based on Plaintiff's carpel tunnel was supported by substantial evidence. Defendant asserts that "the ALJ considered Plaintiff's alleged hand and wrist symptoms, but reasonably found no evidence that Plaintiff had an inability to use his upper extremities." (Doc. 15 [Response to Objections] at 3 (citing Doc. 13 [R&R] at 10–11).) Defendant also argues Plaintiff challenge amounts to advocating for a different interpretation of the evidence and including limitations in the RFC based on that different interpretation. (Doc. 15 at 3.)

### 1.     Consideration of Non-Severe Impairment

Plaintiff asserts that "the RFC must reflect the total limiting effects of the combination of all of a claimant's impairments – both severe impairments and non[-]severe impairments" and argues the ALJ's RFC is defective "[b]ecause the ALJ failed to translate [Plaintiff's] carpal tunnel syndrome into RFC limitations." (Doc. 14 [Objections] at 2 (citing 20 C.F.R. § 404.1545(e)); Doc. 9 [Plaintiff's Motion] at 9 (arguing the ALJ was required to consider severe and non-severe impairments and that Plaintiff's carpel tunnel syndrome was found to be a non-severe impairment).)

The Court finds the ALJ certainly considered Plaintiff's carpel tunnel syndrome in determining Plaintiff's RFC. "The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Social Security Ruling ("SSR") 96-8p). "Even though a non-severe 'impairment[ ] standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.'" *Id.* (quoting SSR 96-8p).

Here, there were no limitations related to Plaintiff's carpel tunnel syndrome included in the RFC because no limitations were warranted. This is not a case in which the ALJ

erred by failing to consider an impairment because it was non-severe. The ALJ considered Plaintiff's carpel tunnel syndrome in detail numerous times throughout the decision. (AR 20–22, 25–26, 30.) As discussed further below, the ALJ analyzes Plaintiff's medical history as to his wrists and hands, starting first with his left hand and wrist (AR 20–21) and then separately addressing his right wrist and hand (AR 21). The ALJ then includes Plaintiff's "history of ganglion cyst in the left wrist [and] history of carpal tunnel syndrome" among other impairments he finds non-severe under the regulatory analysis because they "cause only slight abnormalities that would have no more than a minimal effect on his ability to work during the timeframe in question." (AR 21.)

The ALJ then explicitly states that "as required by the regulations, the undersigned considered all of the claimant's medically determinable impairments, *including those that are not severe*, when assessing the claimant's residual functional capacity." (AR 22 (emphasis added).) A boilerplate statement like this one might not be enough on its own to establish the ALJ considered all non-severe impairments in determining a claimant's RFC, particularly if the ALJ did not otherwise discuss the non-severe impairment. However here, this statement is not unsupported. Plaintiff's wrist and hands are discussed throughout the decision. (AR 22, 25–27, 30.[4])

It is evident from the Court's review of the entire decision that Plaintiff's carpel tunnel syndrome was thoroughly considered by the ALJ. The ALJ simply found limitations associated with Plaintiff's carpel tunnel syndrome were not supported by the record. Accordingly, the Court finds the ALJ considered Plaintiff's carpel tunnel syndrome in determining Plaintiff's RFC.

---

[4] The ALJ's consideration of Plaintiff's carpel tunnel syndrome and the records regarding it is also evident from the hearing testimony. In response to a question from Plaintiff's representative about not including limitations associated with carpel tunnel syndrome in his hypothetical to the vocational expert, the ALJ stated "the consultive examination found no limits appropriate for handling, fingering, and feeling" and "the records just don't support that." (AR 60.)

### 2. ALJ's RFC is Supported by Substantial Evidence

The ALJ's decision not to include limitations based on Plaintiff's carpel tunnel was supported by substantial evidence. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance...." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015)). "Overall, the standard of review is highly deferential." *Id.*

In finding the ALJ properly considered Plaintiff's carpel tunnel syndrome, the Magistrate Judge discussed the ALJ's analysis of Plaintiff's test results and examinations regarding his wrist and hand symptoms. (Doc. 13 [R&R] at 9–11.) The Magistrate Judge provided a detailed explanation of the ALJ findings, including a review of the records the ALJ relied on to make his findings and additional records regarding Plaintiff's carpel tunnel syndrome. (*Id.* at 11–15.) Based on this thorough analysis, the Magistrate Judge concluded there was substantial evidence in the record supporting the ALJ's decision not to include limitations related to Plaintiff's carpel tunnel syndrome in the RFC. (*Id.* at 14–15.) As the Magistrate Judge indicated in the R&R, "when the ALJ decision is supported by substantial evidence and the proper legal standard is applied, even 'if the evidence is susceptible to more than one interpretation, it is the ALJ's conclusion that must be upheld.'" (*Id.* at 15 (quoting *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020)).)

The Court agrees the ALJ's decision not to include carpel tunnel syndrome limitations in the RFC is supported by substantial evidence. This is not a case where the ALJ has selectively picked only favorable findings regarding an impairment and ignored the unfavorable. Here, the ALJ discusses Plaintiff's carpel tunnel history in detail in assessing whether it is a severe impairment. (AR 20–21.) The ALJ acknowledges Plaintiff's reports, as documented in the medical records, and test results over more than three years. (AR 20–21.) The ALJ notes test results that indicated at times Plaintiff had mild to moderate carpel tunnel syndrome. (AR 20–21.) However, the ALJ also explains that at many of these times, he had minimal symptoms or pain, active range of motion

without pain, and was successfully treated. (AR 20–21.) As to his left wrist, the ALJ notes little evidence of treatment after a ganglion syst was removed. (AR 20.) And the ALJ notes specifically as to the right wrist and hand, that his February 2022 consultive examination was almost entirely normal and he needed only routine and conservative treatment. (AR 21.)

The ALJ returns to Plaintiff's carpel tunnel syndrome again in explaining why Plaintiff's impairments do not meet a Listing. The ALJ explained that there "was no evidence that [Plaintiff] had an inability to use one or more of his upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements" and repeated, albeit more briefly, his prior finding that there were times Plaintiff had decreased range of motion, but his other findings were normal. (AR 22.) The ALJ also addressed Plaintiff's hand and wrist claims in finding certain physician opinions not persuasive. (AR 30.) The ALJ notes a physician recommendation to avoid sudden or repetitive movement of the hand and then explains that "his hand pain improved with treatment, and the evidence supporting his allegations were not consistently present throughout the record." (AR 30.) The ALJ cited Plaintiff's normal range of motion in his hands and wrist during the 2022 consultive examination as an example of the physician not taking into account the entirety of the record. (AR 30.) The ALJ also noted Plaintiff's improvement in his hands with treatment. (AR 30.)

Plaintiff objects to the Magistrate Judge's reliance on a 2022 consultive examination that Plaintiff suggests only applied to one hand and argues a medical record from 2020 establishes Plaintiff's carpel tunnel syndrome was not improving. (Doc. 14 [Objections] at 2.) The Court is not persuaded either of these issues even raise an ambiguity as to the medical evidence and certainly do not mean the ALJ's interpretation of the medical evidence was not rationale or supported by substantial evidence. *Smartt*, 53 F.4th at 494 ("ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.") (citations omitted).

Plaintiff asserts the "ALJ only generally referenced Exhibit 8F to support his finding that [Plaintiff] experienced improvement for his carpel tunnel syndrome" and then points to a medical record in 2020 from Dr. Beazley, contained within Exhibit 8F in which Plaintiff argues he reported his "carpel tunnel syndrome on his right side was worse" and Plaintiff "was having significant hand weakness." (Doc. 14 [Objections] at 2 (citing AR 639–40).) Plaintiff's characterization of the ALJ's analysis is inaccurate. The ALJ repeatedly cites specific medical records within Exhibit 8F to support his finding that Plaintiff's carpel tunnel syndrome was only mild to moderate with many normal findings and improvement with treatment. (AR 20–22, 30.) As explained above, the ALJ's findings are supported by substantial evidence. Similarly, Plaintiff's interpretation of the 2022 consultive examination as potentially only applying to one side is not supported. The examination clearly addresses Plaintiff's carpel tunnel syndrome on both sides. The examination results refer to "wrists" and "hands" without any indication the examiner was referring to only one hand or the other. (AR 560.)

While Plaintiff may interpret the record to require inclusion of carpel tunnel syndrome limitations in the RFC based on his interpretation of specific medical records, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Smartt*, 53 F.4th 489, 494 (9th Cir. 2022) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041–42 (9th Cir. 2008) and *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Here, even assuming the evidence could be interpreted as Plaintiff argues, the ALJ's interpretation is equally, if not a more supported, by the evidence. "When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision." *Ahearn v. Saul*, 988 F.3d 1111, 1116–17 (9th Cir. 2021). Accordingly, the Court **OVERRULES** Plaintiff's first Objection to the R&R.

**B.     ALJ's Evaluation of Plaintiff's Statements Based on Objective Findings**

Plaintiff's second Objection is that the ALJ was required to "explain how the objective findings undercut Plaintiff's testimony" and did not connect objective findings to specific testimony from Plaintiff. (Doc. 14 at 2, 4 (citing *Lambert v. Saul*, 980 F.3d

1266, 1277 (9th Cir. 2020)).)  The Court finds, as to the objective findings reason only, that the ALJ did not sufficiently specify which objective findings were inconsistent with Plaintiff's testimony.  The ALJ sufficiently explained how Plaintiff's statements regarding his symptoms were inconsistent with the objective findings and that even if the ALJ's decision was not sufficiently specific in connecting the objective findings to the testimony it undermined, the error was harmless.

### 1. Objective Findings and Plaintiff's Testimony[5]

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014).  "At this step, the medical evidence need not corroborate the severity of the alleged symptoms; the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.* (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

"If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [their]

---

[5] The Court is not required to consider this argument because it is being raised for the first time in Plaintiff's Objections to the R&R.  Plaintiff did not raise this argument in Plaintiff's Motion or Plaintiff's Reply brief before the Magistrate Judge.  District courts have "discretion, but [are] not required, to consider" an argument presented for the first time in an objection to a magistrate judge's recommendation. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); *see also Medina v. Colvin*, Case No. 16CV215-GPC(KSC), 2017 WL 1135730, at *13 (S.D. Cal. Mar. 27, 2017) (exercising discretion to consider argument raised for the first time in an objection from a pro se plaintiff).  Because Defendant has not challenged Plaintiff raising this new argument in Objections and Plaintiff at least noted objective findings in Plaintiff's Motion, albeit not on this point or clearly, the Court exercises its discretion and considers this new argument.

symptoms only by offering specific, clear, and convincing reasons for doing so.'" *Ahearn*, 988 F.3d at 1116 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (collecting cases); *see also Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Here, because the ALJ found Plaintiff satisfied the first step, the ALJ proceeded to the second step. (AR 26 (Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.").)[6] The ALJ then provides three specific, clear, and convincing reasons to discount Plaintiff's statements regarding his symptoms: (1) daily activities (AR 27); conservative and routine treatment (AR 27–28); and objective findings (AR 26, 28–29).[7]

Plaintiff's Objection is directed at the third reason given by the ALJ, the inconsistency between the objective findings and Plaintiff's symptom testimony. (Doc. 14 [Objections] at 2–5.) "Plaintiff agrees with the Magistrate [Judge] that an inconsistency between objective medical evidence and a plaintiff's testimony can be a valid reason for

---

[6] It is clear from the ALJ's analysis that he found inconsistencies between Plaintiff's statements and the objective medical evidence, not that he required "positive objective evidence 'fully corroborating' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 499. The Ninth Circuit has noted that "ALJs commonly use the phrase 'not entirely consistent' … to mean that the claimant's testimony is inconsistent with other evidence in the record," as the ALJ did here. *Smartt*, 53 F.4th at 499 n.2 (explaining this phrasing is commonly confused with "not fully corroborated" and recommending instead using "inconsistent.").

[7] Although the Court cites the specific portion of the decision addressing objective findings in the section of the decision addressing Plaintiff's symptom testimony, the objective findings are also discussed repeatedly throughout the decision in relation to other issues. (AR 20–22, 26, 28–30.)

rejecting subjective statements" but now argues "the ALJ did not connect specific testimony to specific objective findings." (*Id.* at 2.) Plaintiff argues "[t]he ALJ doesn't explain which objective findings he is using as a basis to reject which of [Plaintiff's] statements." (*Id.* at 4.)[8]

The clear and convincing standard requires more than the boilerplate statement from the ALJ that "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). Even when combined with a summary of medical evidence, it "is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Id.* at 1278 (citations omitted). More than "non-specific conclusions that [a plaintiff's] testimony [is] inconsistent with [their] medical treatment" is required. *Id.* at 1277. "The ALJ must identify the testimony that was not credible and specify 'what evidence undermines the claimant's complaints.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). However, ALJs are not required "to perform a line-by-line exegesis of the claimant's testimony [or] to draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277. "Ultimately, the 'clear and

---

[8] As noted above, Plaintiff raised this argument for the first time in his Objections to the R&R. (*See supra* Section III.B.1 note 6.) Plaintiff's Motion did include a section regarding objective findings, but Plaintiff did not articulate a clear argument, certainly not the one asserted now. (Doc. 9 at 12–13.) As the Magistrate Judge noted explicitly in the R&R, "Plaintiff present[ed] no argument other than to state that 'the ALJ is mistaken regarding what he is to consider when evaluating [Plaintiff's] statements. Objective evidence is one of many factors that the ALJ must consider when evaluating subjective statements.'" (Doc. 13 [R&R] at 17 (quoting Doc. 9 [Plaintiff's Motion] at 13).) After this two-sentence statement about objective evidence, Plaintiff proceeded to challenge two other reasons given by the ALJ for discounting Plaintiff's testimony regarding his symptoms—daily activities and routine, conservative treatment. (Doc. 9 at 13–17.) Plaintiff also did not address objective findings in Plaintiff's Reply. The R&R understandably does not address Plaintiff's new argument, i.e. that the ALJ failed to "connect specific testimony to specific objective findings" because it was not addressed by Plaintiff. (Doc. 14 at 2.)

12

convincing' standard requires an ALJ to show his work." *Smartt*, 53 F.4th at 499. "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.*

In arguing the ALJ was not sufficiently specific in connecting the objective findings to Plaintiff's statements, Plaintiff quotes a portion of the ALJ decision that discusses the objective findings as to Plaintiff's back, hips, and knees. (*Id.* at 3 (quoting AR 28).) The portion quoted is three paragraphs, one each addressing back, hips, and knees and more than half a page single spaced. (Doc. 14 [Objections] at 3.) Plaintiff then states

> [t]hus, the ALJ recognizes the following objective findings:
> - Diminished range of motion in his back
> - Tenderness to palpation over his lumbar spine and positive straight leg raise on the left
> - Xray revealing mild to moderate findings in his lumber spine
> - Diminished range of motion in his hip
> - Abnormal range of motion in the knees

(*Id.* at 3–4.)

Plaintiff then asserts "[y]et, the ALJ does not explain how the objective findings contradict [Plaintiff's] statements." (*Id.* at 4.) Plaintiff seems to be arguing the ALJ was required to identify the most negative objective findings about Plaintiff's back, hips, and knees, and explain how those specific objective findings undercut Plaintiff's testimony. However, Plaintiff cites no authority that requires the ALJ to identify an inconsistency between Plaintiff's symptom testimony and the most negative objective findings the Plaintiff can identify. Plaintiff seems to demand the ALJ explain how every single objective finding undercuts Plaintiff testimony on a finding-by-finding basis. This would certainly be comparable to requiring the ALJ "to perform a line-by-line exegesis of the claimant's testimony [or] to draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277.

However, the Court cannot find the ALJ explained which of the objective findings undermined Plaintiff's testimony. Looking to the ALJ's analysis, there is simple not a

clear enough connection between the ALJ's summary of the objective findings and Plaintiff's testimony. While the Court recognizes the many relatively mild and normal objective findings certainly appear to be inconsistent with Plaintiff's more extreme symptom testimony, the ALJ just does not provide that reason or explanation. (AR 25.) For example, the ALJ identified the consultive examination results showing "normal range of motion in all planes, with no tenderness and only mild findings" as to his hips and "normal range of motion with no swelling, effusion, or joint deformities" and "X-ray scans reveal[ing] early osteoarthritis only" as to Plaintiff's knees. (AR 29.) These normal and mild findings seem inconsistent with Plaintiff's claim that he cannot walk more than fifteen feet. (AR 25.) But the ALJ never makes that connection even in a summary fashion. As to the objective findings for Plaintiff's back, hips, and knees, the ALJ simple summarizes the findings without explaining the inconsistency with Plaintiff's testimony. Because the ALJ failed to explain which objective findings undermined Plaintiff's testimony, the objective findings are not a clear and convincing reason to discredit Plaintiff's testimony. *Treichler*, 775 F.3d at 1103 (citations omitted).

### 2. Harmless Error

Even though the ALJ's analysis of the inconsistency between Plaintiff's testimony and the objective findings was not sufficiently specific, the error is harmless here because the ALJ provided two additional clear and convincing reasons for rejecting Plaintiff's symptom testimony. "An ALJ's error [is] harmless where the ALJ provide[s] one or more invalid reasons for disbelieving a claimant's testimony, but also provide[s] valid reasons that were supported by the record." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *see also Glendenning v. Kijakazi*, No. 22-35391, 2023 WL 3479564, at *1 (9th Cir. May 16, 2023) ("even assuming the ALJ's reasoning regarding the objective medical evidence was insufficiently specific, any error was harmless, because the ALJ relied on other valid reasons to discredit [the plaintiff's] testimony including … the conservative nature of her treatment and her daily activities.").

Here, the ALJ provided two other clear and convincing reasons for discounting Plaintiff's symptom testimony—Plaintiff's daily activities and his routine conservative treatment. (AR 27–28.) The Magistrate Judge's R&R found both were clear and convincing reasons to discount Plaintiff's symptom testimony and supported by substantial evidence. (Doc. 13 [R&R] at 20–23 (daily activities); *id.* at 23–26 (conservative routine treatment)[9].) Plaintiff did not object to these findings and the Court agrees the ALJ provided clear and convincing reasons to discount Plaintiff's symptom testimony. *Smartt*, 53 F.4th at 500 ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (quoting *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)); *Smartt*, 53 F.4th at 499–500 (explaining daily activities may be grounds for discrediting a claimant's testimony).

## IV.   CONCLUSION

For the reasons set forth above, the Court **OVERRULES** Plaintiff's Objections (Doc. 14), **ADOPTS** Magistrate Judge Major's R&R (Doc. 13), **DENIES** Plaintiff's Motion (Doc. 9), and **AFFIRMS** the ALJ's decision.

**IT IS SO ORDERED.**

Dated: September 27, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[9] As to Plaintiff's mental health treatment, the R&R finds the ALJ erred in finding psychotropic medications were conservative treatment but finds the error harmless because Plaintiff did not explain what symptoms he believed were improperly discounted on this basis and because Plaintiff's RFC included a limitation based on his mental health symptoms. (Doc. 13 [R&R] at 25–26.) Plaintiff did not object to this portion of the R&R.